United States District Court
Middle District of Florida
Jacksonville Division

CAREY ROBINSON,

   *Plaintiff,*

V.             No. 3:15-CV-988-J-39PDB

DYCK O'NEAL, INC.,

   *Defendant.*

---

# Report & Recommendation

Carey Robinson filed a four-count complaint against Dyck O'Neal, Inc. ("DON"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax"), alleging violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Practices Act ("FCCPA"), and negligence. Doc. 1. The Court dismissed the claims against Experian and Equifax upon stipulations. Docs. 24, 28, 30, 32. Before the Court are DON's motion to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted, Doc. 11, and Robinson's response in opposition, Doc. 17. This report and recommendation follows a referral under 28 U.S.C. § 636(b) and Local Rule 6.01(b). Doc. 33.

I.      **Complaint**

The following allegations are from the complaint and its six attachments (a final judgment of foreclosure, Doc. 1-1; a certificate of title, Doc. 1-2; a May 26, 2015, letter from DON, Doc. 1-3; a June 30, 2015, letter from DON with attachments, Doc. 1-4; Robinson's Experian credit report and dispute result, Doc. 1-5; and Robinson's Equifax credit report and dispute result, Doc. 1-6).

Nationstar Mortgage, LLC ("Nationstar"), filed a foreclosure action against Robinson and others in state court concerning property at 10150 Belle Rive Road, Unit 1208, Jacksonville, Florida. Doc. 1 ¶ 11. The state court entered final judgment of foreclosure against Robinson for $189,793.37, set a foreclosure sale, and reserved jurisdiction to enter a deficiency judgment. Doc. 1 ¶ 12; Doc. 1-1 at 2–3. Nationstar received and recorded a certificate of title for the property. Doc. 1 ¶ 13; Doc. 1-2. Neither it nor its assignees, subsidiaries, or agents sought a judicial determination of deficiency against Robinson. Doc. 1 ¶ 16.

Around May 26, 2015, DON mailed Robinson a letter with copies of the judgment and certificate of title. Doc. 1 ¶ 20; Doc. 1-3. The letter identified the original creditor on the mortgage and explained the proceeds from the foreclosure sale were insufficient to pay the mortgage note. Doc. 1 ¶ 21; Doc. 1-3. It listed the $189,793.37 debt amount from the final judgment of foreclosure, an appraisal value of $76,000, a mortgage-insurance offset of $1461.56, a deficiency amount of $112,331.81, and post-sale interest of $4354.88, for a total amount owed of $116,686.69. Doc. 1 ¶ 21; Doc. 1-3. It did not demand payment but, after listing those

amounts, stated, "Please feel free to contact Debi Randall at Ext. 2315 with any further questions," and, at the bottom of the page, advised, "NOTE: This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." Doc. 1-3.

Shortly after the letter was mailed to Robinson, he disputed the debt with DON. Doc. 1 ¶ 25. On June 30, 2015, DON sent him a letter stating:

> Please find attached a copy of the documents supporting the debt owed to [DON].
>
> If, in fact, the signature on these documents is not yours, please execute the attached Affidavit in the presence of a notary and return it to undersigned. Please also provide a copy of your driver's license. [DON] also requires that you provide a report filed either with the police or other law enforcement agency. The report must specifically state that the [DON] account is the subject of fraudulent activity.
>
> Please feel free to contact Jori O'Neal at Ext. 2320 with any further questions.

Doc. 1 ¶ 26; Doc. 1-4 at 1. Like the other letter, this letter, at the bottom of the page, advised, "NOTE: This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." Doc. 1-4 at 1. DON attached to the letter a blank identity affidavit, the original mortgage note, an assignment of the judgment and note from Nationstar Mortgage, LLC, to Federal Home Loan Mortgage Corporation, and an assignment of the judgment and note from Federal Home Loan Mortgage Corporation to DON. Doc. 1 ¶¶ 26–27, Doc. 1-4.

DON reported to Experian, Equifax, and Transunion that Robinson owed a debt of approximately $112,332. Doc. 1 ¶ 22. Robinson discovered that DON had reported that information when he checked his Experian and Equifax credit reports.

3

Doc. 1 ¶¶ 36, 37, 50, 51. Both showed he owed DON a past-due debt of $112,332. Doc. 1 ¶¶ 37, 51; Doc. 1-5; Doc. 1-6. He submitted online disputes with Experian and Equifax and requested deletion of the information on the asserted ground he did not owe the debt. Doc. 1 ¶¶ 38, 52. Experian explained over the telephone its research showed he owed the debt and told him he could view a written explanation online. Doc. 1 ¶ 40. He has not been able to view the explanation. Doc. 1 ¶ 40. Equifax explained its research showed the "judgment [in the mortgage foreclosure case] is currently not reporting on the Equifax credit file." Doc. 1-6 at 4. Neither company removed the information. Doc. 1 ¶¶ 42, 46, 56, 60, 67. He submitted the same dispute to Transunion, and Transunion deleted the information. Doc. 1 ¶¶ 67, 86.

Based on the legal conclusion, "a deficiency cannot exist without a judicial determination," Robinson alleges DON did not conduct a reasonable investigation of the dispute, Doc. 1 ¶¶ 15, 28, 41, 55, its actions were "malicious, willful, and … performed with either the intent to harm [him] and/or with the knowledge that its actions would likely harm [him]," Doc. 1 ¶ 33, and it "maliciously, willfully, intentionally, recklessly, and or/ [sic] negligently failed to review the information provided in the disputes and conduct a reasonable investigation of the DON account," Doc. 1 ¶ 29.

In count I, Robinson claims DON violated an unspecified section of the FCRA by "fail[ing] or refus[ing] to delete information … it should have found to be inaccurate and fail[ing] or refus[ing] to conduct a proper investigation." Doc. 1 ¶ 64–69. In count II, he claims DON violated § 1692e of the FDCPA by continuing to "try

and collect on a debt that it knows, or should know, is not legitimate." Doc. 1 ¶¶ 70–74. In count III, he claims DON violated § 559.72 of the FCCPA by trying to collect a debt not owed. Doc. 1 ¶¶ 75–80. In count IV, he asserts DON breached a duty of care by intentionally, recklessly, or wantonly failing to properly investigate the alleged debt and inaccurately reporting it. Doc. 1 ¶¶ 81–87.

## II.   Standard

To decide a Rule 12(b)(6) motion, a court may consider only the factual allegations in the complaint, anything attached to the complaint, anything extrinsic to the complaint that is central to the claim and without challenge to its authenticity, and any judicially noticeable facts. *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). The court must accept as true factual allegations and construe them in the light most favorable to the non-movant. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012).

## III.   Law & Analysis

### A.   *Count I: Fair Credit Reporting Act (FCRA)*

DON argues the Court should dismiss the FCRA claim because Robinson fails to allege any consumer reporting agency notified it of the dispute as required to state an FCRA claim.[1] Doc. 11 at 4–7. He concedes that when he filed the complaint he had

---

[1]DON contends the complaint does not clearly indicate whether Robinson is trying to assert a claim against it under the FCRA in count I, observing he identifies the FCRA provision Equifax and Experian assertedly violated but no provision it assertedly violated. Doc. 11 at 4. Although Robinson could have been more specific by citing the FCRA provision DON allegedly violated, he sufficiently indicates he is trying to assert an FCRA claim against DON by incorporating into count I general complaint allegations concerning DON, Doc. 1 ¶ 64 (including that DON failed to

possessed limited knowledge of whether Equifax and Experian had notified DON of the dispute but had assumed they had because Equifax and Experian had investigated the dispute. Doc. 17 at 3. He contends DON's argument should be saved for a summary judgment motion because, since he filed the complaint, Equifax and Experian representatives have informed his counsel "DON was notified of [the] dispute." Doc. 17 at 3. He adds that even without notification, DON is liable for providing Equifax and Experian with inaccurate information. Doc. 17 at 3–4.

Congress enacted the FCRA to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit" in a manner that "is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Besides governing what consumer reporting agencies must do or not do, the FCRA imposes responsibilities on "furnishers of information to consumer reporting agencies." 15 U.S.C. § 1681s-2. The FCRA includes public and private enforcement provisions. *See* 15 U.S.C. §§ 1681n ("Civil liability for willful noncompliance"); 1681o ("Civil liability for negligent noncompliance"); 1681s ("Administrative enforcement").[2]

---

correct inaccurate information in violation of the FCRA, Doc. 1 ¶ 29, and knew its acts violated the FCRA, Doc. 1 ¶ 33), alleging in count I DON is a "furnisher," under the FCRA, Doc. 1 ¶ 66, and alleging in count I, "DON, Experian, and Equifax failed or refused to delete information … it should have found to be inaccurate and failed or refused to conduct a proper investigation," Doc. 1 ¶ 67.

[2]Before a court may decide a claim, it must have Article III jurisdiction, which requires standing to sue. *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 95–102 (1998). For standing, a party seeking relief must show he suffered (1) an injury in fact (2) that is fairly traceable to the challenged conduct of the opposing party, and (3)

Under the FCRA, if a consumer notifies a consumer reporting agency that he disputes the accuracy of information in his file at the agency, the agency must give the furnisher of the disputed information notification of the dispute and relevant information provided by the consumer. 15 U.S.C. § 1681i(a)(2). The agency must conduct a "reasonable reinvestigation" without charge and record the status of the disputed information or, if the disputed information is inaccurate, delete it. 15 U.S.C. § 1681i(a)(1).

Robinson alleges DON is a furnisher of information to consumer reporting agencies under the FCRA. Doc. 1 ¶ 66. DON does not dispute that allegation. *See generally* Doc. 11. The responsibilities of "furnishers of information to consumer reporting agencies" are in § 1681s-2. Subsection (a) prohibits a furnisher from reporting information with knowledge of error and imposes on a furnisher duties to

---

that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The United States Supreme Court recently held a consumer must allege injury-in-fact for standing to bring an FCRA claim. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Establishing injury-in-fact requires showing "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks omitted). To be concrete, an injury need not be tangible but must exist; a "bare procedural violation" does not suffice. *Id.* at 1548–49. To be particularized, an injury "must affect the plaintiff in a personal and individual way." *Id.* at 1548.

Here, Robinson alleges DON's conduct has caused ongoing "monetary loss, damage to his credit worthiness, mental distress and emotional anguish, and other damages." Doc. 1 ¶ 32. Those alleged injuries, if true, are concrete (they exist and are not mere procedural violations), particularized (they affect him personally), and actual (they are not speculative). They are traceable to DON's alleged conduct and would be redressed by a favorable decision. He therefore sufficiently shows standing. DON does not contend otherwise.

correct and update information, provide notice of certain things, and permit consumers to directly dispute information. 15 U.S.C. § 1681s-2(a)(1)−(9). Subsection (b) requires a furnisher to take actions after a consumer reporting agency notifies it of a dispute by a consumer. It must: (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the consumer reporting agency"; (3) "report the results of the investigation to the consumer reporting agency"; (4) "if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis"; and (5) "if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," promptly take corrective action. 15 U.S.C. § 1681s-2(b)(1)−(2).

Subsection (c) provides that the private enforcement provisions of the FCRA do not apply to any violation of subsection (a), and, relatedly, subsection (d) provides that subsection (a) "shall be enforced exclusively" by state and federal agencies. 15 U.S.C. § 1681s-2(c), (d). "Congress … expressly reserved enforcement of subsection (a) to governmental agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to violations of [subsection (b)]." *Chipka v. Bank of Am.*, 355 F. App'x 380, 383 (11th Cir. 2009).

In *Peart v. Shippie*, the Eleventh Circuit affirmed the Rule 12(b)(6) dismissal of an FCRA claim against a furnisher of information to a consumer reporting agency because the plaintiff had not alleged failure to investigate a dispute *after* notification

of the dispute by an agency. 345 F. App'x 384, 386 (11th Cir. 2009). The Eleventh

Circuit explained:

> [T]he FCRA prohibits furnishers of credit information from providing
> false information. However, the statue explicitly bars private suits for
> violations of this provision. The FCRA also requires furnishers of credit
> information to investigate the accuracy of said information upon
> receiving notice of a dispute. This provision of the FCRA can be enforced
> through a private right of action, but only if the furnisher received notice
> of the consumer's dispute from a consumer reporting agency.

*Id.* (internal citations omitted); *accord Arianas v. LVNV Funding LLC*, 54 F. Supp.

3d 1308, 1311 (M.D. Fla. 2014). Although *Peart* is unpublished, its reasoning is

persuasive because it is based on the FCRA's express language. *See id.*

Here, as in *Peart*, Rule 12(b)(6) dismissal of the FCRA claim is warranted.

Although Robinson alleges he disputed the debt with DON, Equifax, and Experian,

Doc. 1 ¶¶ 25, 38, 52, he does not allege Equifax, Experian, or any other consumer

reporting agency notified DON of the dispute, *see generally* Doc. 1. No reasonable

inference of notification may be drawn from the complaint allegations or attachments

indicating Equifax and Experian investigated or reinvestigated the dispute because

an agency's duty to notify a furnisher of a dispute is separate from its duty to

reinvestigate the dispute, *compare* 15 U.S.C. § 1681i(a)(1)(A) (reinvestigation duty),

*with* 15 U.S.C. § 1681i(a)(2) (duty to provide notification), and, moreover, Robinson

alleges Equifax and Experian fell short on their duties, having allegedly failed to

perform reasonable investigations, Doc. 1 ¶¶ 41, 55, failed to maintain or follow

reasonable procedures to assure the maximum possible accuracy of his credit reports,

Doc. 1 ¶¶ 47, 61, and acted with an intent to harm him or with reckless disregard to harm him, Doc. 1 ¶¶ 48, 62.

Robinson is incorrect that DON is liable in a private cause of action for providing Equifax and Experian with inaccurate information regardless of notification from them because the prohibition against providing inaccurate information to consumer reporting agencies is in subsection (a) of § 1681s-2 and thus not enforceable in a private cause of action. *See* 15 U.S.C. § 1681s-2(a), (c), (d); *Peart,* 345 F. App'x at 386.

The case Robinson cites for the argument DON is liable for providing Equifax and Experian with inaccurate information regardless of notification from them, *Carruthers v. American Honda Finance,* 717 F. Supp. 2d 1251 (N.D. Fla. 2010), hurts—not helps—him. There, the plaintiff disputed he owed the defendant a debt for damage to his leased car and, when the defendant filed an adverse credit report, brought claims against it under the FCRA and state law. *Id.* at 1252–53. The court found he had not stated a claim under subsection (a) because that subsection does not provide a private right of action or under subsection (b) because he had not alleged the defendant received notice from a consumer reporting agency. *Id.* at 1253. Robinson quotes *Carruthers* as stating, "'A furnisher that knowingly gives inaccurate information to a consumer-reporting agency violates the *Fair Credit Reporting Act,* regardless of whether the furnisher was on notice of a dispute when it sent the information,'" Doc. 17 at 4 (emphasis added), but *Carruthers* actually states, "A furnisher that knowingly gives inaccurate information to a consumer-reporting

agency violates *this provision*, regardless of whether the furnisher was on notice of a dispute when it sent the information," with reference to subsection (a), *see Carruthers*, 717 F. Supp. 2d at 1257 (emphasis added). The court used the absence of a notice requirement for subsection (a) as a reason for rejecting a preemption argument; it did not suggest there is a private cause of action for that subsection. *Id.* at 1256–57.

To decide the motion to dismiss, the Court cannot consider Robinson's statement in his response that Equifax and Experian representatives have informed his counsel "DON was notified of [the] dispute," Doc. 17 at 3, because it is outside the complaint and complaint attachments and not otherwise appropriate for consideration on a motion to dismiss. *See Osheroff*, 776 F.3d at 811.

Because Robinson fails to allege a consumer reporting agency notified DON as required to state a claim under subsection (b), and because Robinson cannot bring a private cause of action under subsection (a) prohibiting certain acts regardless of notice, I recommend **granting** DON's motion to dismiss the FCRA claim (count I).

**B.**   ***Count II: Fair Debt Collection Practices Act (FDCPA)***
     ***Count III: Florida Consumer Collection Practices Act (FCCPA)***

DON argues the Court should dismiss the FDCPA and FCCPA claims because Robinson's allegations and the complaint attachments establish only fair attempts to collect a legitimate debt. Doc. 11 at 7–10. It contends that, under Florida law, a creditor need not have a deficiency decree or judgment to collect a deficiency amount. Doc. 11 at 7–10, 14. Robinson responds the alleged debt does not exist because "a deficiency judgment cannot be pursued unless granted by the foreclosing court or in

11

an independent action for deficiency timely filed." Doc. 17 at 5. He states he had no opportunity to challenge the alleged deficiency balance and DON knew or should have known the debt did not exist.[3] Doc. 17 at 4–6.

The FDCPA and the FCCPA prohibit abusive, deceptive, and unfair debt-collection practices. 15 U.S.C. § 1692(e); Fla. Stat. § 559.72. Like the FCRA, they include public and private enforcement provisions. *See* 15 U.S.C. § 1692k ("Civil liability"); 15 U.S.C. § 1692l ("Administrative enforcement"); Fla. Stat. § 559.77(2) ("Civil remedies"); Fla. Stat. § 559.554 ("Powers and duties of the commission and office").

The FDCPA and FCCPA define "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5), Fla. Stat. § 559.55(6). DON does not seek

---

[3]In the complaint, Robinson contends the deadline to seek a deficiency decree was July 5, 2015, Doc. 1 ¶ 17, but alleges the assertedly offending debt-collection letters were sent before then (on or about May 26, 2015, and on or about June 30, 2015), Doc. 1 ¶¶ 20, 26. Although he alleges generally, "DON has continued to try and collect on a debt that it knows, or should know, is not legitimate," Doc. 1 ¶ 73, he does not assert DON violated the FDCPA and FCCPA by trying to collect a time-barred debt, and his specific allegations relating to those claims concern only the letters. *See generally* Doc. 1 ¶¶ 70–80. The Court therefore does not have to decide the circumstances under which a debt collector violates the FDCPA and FCCPA by trying to directly collect a time-barred debt. *Cf.* *Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 1259–61 (11th Cir. 2014) (debt collector engaged in unfair conduct by filing time-barred proof of claim in bankruptcy proceeding), *cert. denied*, *LVNV Funding, LLC v. Crawford,* 135 S. Ct. 1844 (2015).

dismissal on the ground Robinson fails to allege the existence of a debt primarily for personal, family, or household purposes. *See generally* Doc. 11.

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including falsely representing "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2), and threatening "to take any action that cannot legally be taken," 15 U.S.C. § 1692e(5). The FCCPA prohibits anyone collecting a debt from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

Robinson's FDCPA and FCCPA claims depend on whether the deficiency between the amount due on the promissory note and the amount satisfied by the foreclosure sale was a debt absent a judgment. He does not argue otherwise. *See generally* Doc. 17. A promissory note is "a contract evidencing a debt and specifying terms under which one party will pay money to another." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). A note may be secured by a mortgage on real property. *Id.* An action for money damages for breach of a promissory note is an action in personam against the debtor seeking to recover money from him, while a foreclosure is an action in rem against the property securing the note seeking "legal determination of the existence of the mortgage lien, the ascertainment of its extent, and the subjection to a sale of the estate pledged for its satisfaction." *United States v. Begin*, 160 F.3d 1319, 1321 (11th Cir. 1998).

A "deficiency judgment," or "deficiency decree," is a judgment against a debtor for the unpaid balance of a debt if a foreclosure sale does not satisfy the underlying debt. BLACK'S LAW DICTIONARY (10th ed. 2014). Under Florida law, "the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound discretion of the court." Fla. Stat. § 702.06. "The complainant shall also have the right to sue at common law to recover such deficiency, unless the court in the foreclosure action has granted or denied a claim for a deficiency judgment." *Id.* Even if the mortgage holder does not apply for a deficiency judgment, it is still owed a debt and may file a separate suit to collect the deficiency balance. *See Symon v. Charleston Capital Corp.*, 242 So. 2d 765, 767 (Fla. 4th DCA 1970) ("[T]he full indebtedness secured by the mortgage is not ipso facto satisfied merely because of the mortgagee's subsequent failure to apply for a deficiency judgment. The mortgagee, without seeking a deficiency judgment …, can bring a new and separate action on the obligation itself."[4]).

Federal courts addressing the issue here have held that, under Florida law, a deficiency amount is a debt even absent a judgment. *See Rojas v. Law Offices of Daniel C. Consuegra, P.L.*, 142 F. Supp. 3d 1206, 1216 (M.D. Fla. 2015);[5] *DeFrancesco*

---

[4]*Symon* refers to the foreclosure procedure in the 1967 Florida Statutes. *Symon*, 242 So. 2d at 767 (citing Fla. Stat. § 702.02 (1967)). Those statutes contained a deficiency decree provision substantially similar to the one in effect today. *Compare* Fla. Stat. § 702.06 (2016) *with* Fla. Stat. § 702.06 (1967).

[5]DON was also a defendant in *Rojas* but made a different argument there, contending a deficiency amount absent a judgment is not a debt under the FDCPA or FCCPA and, absent a debt, a plaintiff cannot state a claim under the FDCPA or FCCPA. 142 F. Supp. 3d at 1214. DON does not make that alternative argument here,

14

*v. Veripro Solutions Inc.*, No. 2:14–CV–27–FTM–29DNF, 2014 WL 4387570, at \*3 (M.D. Fla. Sept. 5, 2014) (unpublished); *Medina v. LCS Fin. Servs. Corp.*, No. 1:09-cv-20557-CMA, at \*5–6 (S.D. Fla. April 28, 2009) (unpublished).

In *Rojas*, the court highlighted the language in the FDCPA's and FCCPA's definitions of debt encompassing obligations to pay "whether or not such obligation has been reduced to judgment," 15 U.S.C. § 1692a(5), Fla. Stat. § 559.55(6). 142 F. Supp. 3d at 1216. In *DeFrancesco*, the court observed, "Plaintiffs do not cite, and the Court is not aware of, any case law holding that the holder of a mortgage on a foreclosed property has no right to collect a deficiency balance prior to reducing that balance to a judgment." 2014 WL 4387570, at \*3. Pointing to Florida law allowing a mortgage holder to sue at common law to obtain a deficiency judgment unless denied in the foreclosure action, the court reasoned, "Given that the mortgage holder has the right to file suit to collect a deficiency balance, it would be illogical to prevent the mortgage holder from contacting the debtor in an attempt to recover the deficiency balance prior to filing suit." *Id*. The court dismissed the FDCPA and FCCPA claims because they cannot be based on fair, non-abusive, non-harassing demands for legitimate debts. *Id*.

Likewise here, Rule 12(b)(6) dismissal of the FDCPA and FCCPA claims is warranted. According to the complaint allegations and attachments, Robinson executed a promissory note obligating him to pay back money from a lender. Doc. 1-

---

*see generally* Doc. 11, and Robinson does not argue any sort of estoppel, *see generally* Doc. 17.

4. After the foreclosure sale, if the proceeds from the sale did not cover the amount owed, the note holder could have pursued a deficiency in court or sought to collect the amount without use of the court system. *See* Fla. Stat. § 702.06; *DeFrancesco*, 2014 WL 4387570, at *3. The unsatisfied obligation on the underlying note remained, regardless of whether a court issued a deficiency decree or judgment. *See Symon*, 242 So. 2d at 767. The FDCPA and FCCPA include in their definitions of "debt" obligations not reduced to judgment, 15 U.S.C. § 1692a(5), Fla. Stat. § 559.55(6), and there is no reason that definition excludes a deficiency debt. Robinson's argument that the deficiency debt cannot exist absent a judgment therefore fails. Accepting the allegations in the complaint and its attachments as true, DON has not violated the FDCPA or FCCPA.

Robinson's argument he may not owe a deficiency amount because DON has not shown how it determined the appraisal value of the property and he never had an opportunity to challenge that value or the amount of any deficiency does not save his FDCPA and FCCPA claims. There is no allegation in the complaint that the appraisal value or amount owed were incorrect, only that a debt for the deficiency amount cannot exist without a judgment. *See* Doc. 1 ¶¶ 15, 18 n.2.

Because the legal conclusion on which Robinson bases his FDCPA and FCCPA claims is incorrect (that a deficiency amount is not a debt absent a judgment), I recommend **granting** DON's motion to dismiss the FDCPA and FCCPA claims (counts II and III).

16

C.    *Count IV: Negligence*

DON argues § 1681h(e) of the FCRA preempts Robinson's negligence claim because he has not alleged facts to demonstrate that DON plausibly acted with malice or willful intent to injure him. Doc. 11 at 10–15. He responds the only explanation for DON's confirmation of the debt is that it intended to "willfully injure [his] credit and financial status" and its attempts to collect an unenforceable debt imply it has a "hidden agenda" against him. Doc. 17 at 6–7.

To state a common-law negligence claim, a plaintiff must allege "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (applying Florida law). Section 1681h(e) of the FCRA limits consumers' ability to bring common-law negligence claims against furnishers of information to consumer reporting agencies. 15 U.S.C. § 1681h(e). It provides:

> Except as provided in sections 1681n ["Civil liability for willful noncompliance"] and 1681o ["Civil liability for negligent noncompliance"] …, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against … any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g ["Disclosers to consumers"], 1681h ["Conditions and form of disclosure to consumers"], or 1681m ["Requirements on users of consumer reports"] …, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).[6]

---

[6]A later-enacted provision of the FCRA—15 U.S.C. § 1681t(b)(1)(F)—also addresses preemption. It provides, "No requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under …

17

Both parties assume the alleged breach (failing to properly investigate an asserted debt and inaccurately reporting it, Doc. 1 ¶¶ 81–87) falls within the scope of § 1681h(e) and focus on whether Robinson sufficiently alleges malice or willful intent to injure. On that issue, DON has the winning argument.[7] But the assumption is not

---

section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Courts take three approaches to reconciling 15 U.S.C. § 1681h(e) and § 1681t(b)(1)(F): (1) the temporal approach, reasoning that § 1681t(b)(1)(F) preempts claims based on conduct after the furnisher has notice of a dispute and § 1681h(e) preempts claims based on conduct before it has notice; (2) the statutory approach, reasoning that § 1681t(b)(1)(F) preempts only claims arising from state statutory law and § 1681h(e) preempts claims arising from state common law; or (3) the complete preemption approach, reasoning that § 1681t(b)(1)(F) preempts all state-law claims either because it superseded and implicitly repealed § 1681h(e) or because it does not conflict with § 1681h(e). *See Williams v. Student Loan Guar. Found. of Ark.*, No. 5:12-cv-02940-JHE, 2015 WL 241428, at *11 (N.D. Ala. Jan. 20, 2015) (unpublished) (describing approaches); *Triplett v. JPMorgan Chase Bank*, 2014 WL 4351429, at *3–4 (N.D. Fla. July 9, 2014) (unpublished) (same). The Second and Seventh Circuits—the only circuits that have addressed the issue—take the complete preemption approach. *See Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011); *Purcell v. Bank of Am.*, 659 F.3d 622, 625 (7th Cir. 2011). Because DON does not argue dismissal is warranted based on § 1681t(b)(1)(F) preemption, this Court need not decide the issue.

[7]If DON's actions fall within the scope of § 1681h(e), they are preempted because Robinson has not sufficiently alleged malice or willful intent. Malice or willful intent may be alleged generally, Fed. R. Civ. P. 9(b), but the allegations must still provide a "short and plain statement of the claim"; pleading the "bare elements" of a cause of action does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009). As DON contends, courts routinely find claims founded on conclusory allegations of malice or willful intent insufficiently pled. *See, e.g., Clark v. Saxon Mortg. Co.*, No. 11-0065-JJB-SCR, 2011 WL 2682435, at *2 (M.D. La. July 8, 2011) (unpublished); *Henderson v. Wells Fargo Bank*, No. 3:09cv01, 2009 WL 1259355, at *6 (W.D.N.C. May 5, 2009) (unpublished); *Hutchins v. Bank of Am.*, N.A., No. 13–cv–03242–JCS, 2013 WL 5800606, at *18 (N.D. Cal. Oct. 28, 2013) (unpublished). Here, the complaint includes only conclusory allegations that DON acted maliciously, willfully, intentionally, or recklessly in failing to investigate and inaccurately reporting the debt. Doc. 1 ¶¶ 29, 81–87.

indisputably correct; many courts question whether § 1681h(e) applies to claims relating to information that had not been disclosed under § 1681g, §1681h, or §1681m or by a user of information, and no binding precedent addresses the issue.[8] Supplemental briefing on the issue is unnecessary because the complaint fails to state a negligence claim for substantially the same reason it fails to state FDCPA and FCCPA claims: the legal conclusion on which Robinson bases the negligence claim is incorrect (that a deficiency amount is not a debt absent a judgment). Based on that faulty legal conclusion, he alleges DON "assumed a duty to accurately report the DON account on [his] credit report," and breached that duty "by not properly investigating and reporting the alleged debt owed [in]accurately." Doc. 1 ¶¶ 82, 83. As explained above in Part III.B., that legal conclusion is incorrect. Robinson alleges no other fact to support a plausible claim that DON breached a duty of care. *See generally*, Doc. 1. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must show "more than

---

[8]Some courts observe the specified sections—§§ 1681h, 1681g, and 1681m—pertain to users of consumer reports and disclosures to consumers, not a furnisher's provision of information to consumer reporting agencies. *See, e.g., Ross v. FDIC,* 625 F.3d 808, 813–14 (4th Cir. 2010); *White v. Midland Funding, LLC,* No. 2:14-cv-1968, 2015 WL 5084232, at *6 (N.D. Ala. Aug. 27, 2015) (unpublished); *Davidson v. Capital One, N.A.,* No. 14–20478–CIV, 2014 WL 3767677, at *4–5 (S.D. Fla. July 31, 2014) (unpublished). *But see Johnson v. Wells Fargo Home Mortg., Inc.,* 635 F.3d 401, 421 (9th Cir. 2011) (explaining in dictum why § 1681h(e) might apply to a furnisher's duties of reporting and investigation); *Lofton-Taylor v. Verizon Wireless,* 262 F. App'x 999, 1002 (11th Cir. 2008) (stating in unpublished opinion without detailed statutory analysis that § 1681h(e) "by its terms[] protects the truthful statements that furnishers of credit information make to reporting agencies").

.

a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Robinson has not done so.

Because Robinson has not alleged a breach of a duty of care, I recommend **granting** the motion to dismiss the negligence claim (count IV).

### D.   *Leave to Amend*

In the response to the motion to dismiss, Robinson summarily requests leave to amend the complaint if the Court holds it fails to state claims upon which relief may be granted. Doc. 17 at 4, 6, 7. The Court already denied that summary request without prejudice to filing a proper motion. Doc. 18. No motion followed, and the deadline for amending the complaint has since passed. *See* Doc. 29 (case management and scheduling order establishing a March 9, 2016, deadline for moving to amend the complaint).

Federal Rule of Civil Procedure 16's good-cause standard applies when a party moves for leave to amend after a scheduling order deadline. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 & n.2 (11th Cir. 1998). It is unlikely Robinson could satisfy the good cause standard in light of the Court's pre-deadline order directing him to file a proper motion if he wished to amend the complaint, Doc. 18. Besides untimeliness, if the Court rejects the legal conclusion on which Robinson bases the claims (that a deficiency amount is not a debt absent a judgment), any belated amendment likely would be futile.

## IV.     Recommendation

I recommend **granting** the motion to dismiss, Doc. 11, and **dismissing** the

case.[9]

**Entered** in Jacksonville, Florida, on June 21, 2016.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:     The Honorable Brian J. Davis
       Counsel of record

---

[9]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; Local Rule 6.02.